UNITED DISTRICT COURT FOR THE

EASTERN DISTRICT OF KENTUCKY

CENTRAL DIVISION AT LEXINGTON

**Civil Action No. _____**

| | |
|---|---|
| VERONICA TROWBRIDGE,<br><br>                                            Plaintiff<br><br>v.<br><br>BALL HOMES, LLC,<br>WALDEN MORTGAGE GROUP, LLC, and<br>MILESTONE REALTY CONSULTANTS, LLC<br><br>                                            Defendants | **COMPLAINT**<br><u>Jury Trial Requested</u><br>(electronically filed) |

Plaintiff Veronica Trowbridge brings this Complaint about the denial to her of valuable employment benefits and unlawful employment, housing, and credit discrimination against her, and states as follows:

1.      This civil action arises under the laws of the United States, specifically 42 U.S.C. §§ 1981, 1982, 3604, 3605, and 3617, and 15 U.S.C. § 1690.  Original jurisdiction is thus conferred upon this Court by 28 U.S.C. § 1331.  The state-law claims set forth herein are so related to the federal claims that they form part of the same case or controversy under Article III of the United States Constitution; therefore, this Court has supplemental jurisdiction over those claims pursuant to 28 U.S.C. § 1367(a).

2.      Plaintiff Veronica Trowbridge is a natural person and Kentucky resident.  During the 2013-14 time period in which most of the events described below took place, she resided and worked in Fayette County.

3.      Defendant Ball Homes, LLC ("Ball Homes")  is a limited liability company organized under the laws of Kentucky.  It lists Jonathan R. Norris, 3609 Walden Drive, Lexington

(Fayette County), KY 40517, as its registered agent in Kentucky for service of process; its principal office is at that same street address.

4.      Defendant Walden Mortgage Group, LLC ("Walden") is a limited liability company organized under the laws of Kentucky.  It lists Rena Wiseman, 3609 Walden Drive, Lexington (Fayette County), KY 40517, as its registered agent in Kentucky for service of process; its principal office is at that same street address.

5.      Defendant Milestone Realty Consultants, LLC ("Milestone") is a limited liability company organized under the laws of Kentucky.  It lists Jonathan R. Norris, 3609 Walden Drive, Lexington (Fayette County), KY 40517, as its registered agent in Kentucky for service of process; its principal office is at that same street address.

6.      The Eastern District of Kentucky, Central Division at Lexington, is a proper venue and jury division for this action because Fayette County is the principal place of business for Defendants, the place of Ms. Trowbridge's residence and employment during the relevant time period, the location of the two residential properties involved, and the site of many of the events described below.

**Transaction/Occurrence Facts**

7.      On information and belief, Defendants are affiliated companies, with interlocking ownership and management, subject to common control and engaged in a collective enterprise led by Ball Homes.  The Defendants' collective enterprise — which includes the development, construction, sale/purchase/lease, and financing of residential properties — is referred to herein as "the Ball Homes enterprise" or "BHE".

8.      Ms. Trowbridge was an employee of Ball Homes from approximately August 2012 to February 2014.   Prior to becoming a Ball Homes employee, Ms. Trowbridge had pur-

chased a home with her husband in a Ball Homes enterprise development in Fayette County. This was her family's residence until August 2013.

9.      One of the Ball Homes employee benefits was a substantial discount on the pur-chase of a BHE house by an employee as his or her primary residence.  In 2013, Ms. Trowbridge expressed interest in, and was qualified for, receipt of an 8% employee discount in purchasing a property to be her primary residence in a new BHE development, the Enclave at Chilesburg ("the Enclave").  In June 2013, her employee discount application was approved.

10.      Over the next two months, while she was on pregnancy leave, Ms. Trowbridge worked with Ball Homes' affiliated realtor (Milestone, as required for the full discount) and mortgage broker (Walden) to obtain the required pre-approval for financing and take all other steps to purchase a to-be-constructed house in the Enclave development.  On information and belief, conditions in addition to those that were generally applicable and uniformly applied were imposed on her financing application so as to deny or delay her financing pre-approval and thereby forestall any BHE contract with her for an Enclave property.

11.      In July 2013, Ms. Trowbridge was told by Walden and/or Milestone personnel that in order to meet preconditions to reserve a lot in the Enclave development she must sell her existing house.  Ms. Trowbridge arranged for an expedited sale of that property, closing in early August, and for interim housing for her family and storage for many of their household goods. Milestone received a commission on the sale of her existing house.

12.      Soon thereafter, in August 2013, and within days of returning to work after her leave, Ms. Trowbridge was called into the office of a BHE corporate officer.  She was asked whether it was true that her father resided with her family and whether he was a registrant under KRS 17.510.  After Ms. Trowbridge answered "yes" to both questions, she was informed that she

- 3 -

would not be allowed to use the employee discount and that BHE would not sell her a house in any of its developments.  To qualify for the employee discount, Ms. Trowbridge had not been asked either question; neither three-generation families nor registrant status is a generally applicable, uniformly applied disqualifier for the employee benefit or for any known covenants or restrictions on BHE developments.

13.     Ms. Trowbridge has Hispanic ancestry, and because of her darker coloring, hair, and facial characteristics she was perceived by others at BHE and in her old BHE neighborhood to be Hispanic, to speak Spanish as her first language, or to be an immigrant to the U.S. from Mexico or a Central or South American country.  Her color and Hispanic national origin put her in a distinct minority among BHE white-collar and office employees.  Similarly, these characteristics and her ethnically "mixed" marriage put her and her family in a minority in her old BHE neighborhood.

14.     Ms. Trowbridge's father has a Hispanic name and more stereotypically "Hispanic" facial features.  In 2013, he retired and moved from California to Kentucky to live near her, her husband, and their children.  While her father looked for his own place to live, the plan was that he would reside with her family.  In compliance with KRS 17.510, he registered his home address as that of Ms. Trowbridge.  This registration went on-line in mid-June 2013.

15.     On information and belief, BHE has (a) given financing pre-approval more quickly or with fewer preconditions to white or non-Hispanic applicants than to Ms. Trowbridge, (b) sold or participated in the sale of residential properties to white or non-Hispanic registrants under KRS 17.510  in a BHE development or with a BHE-managed neighborhood/homeowners' association, and (c) not induced or forced any white or non-Hispanic registrant under KRS

- 4 -

17.510 to sell or move out from an unsubsidized residential property in a BHE development or with a BHE-managed neighborhood/homeowners' association.

16.     When her application for using the employee discount had been approved in June 2013, Ms. Trowbridge shared her plans and enthusiasm for purchasing a home in the new development with others who worked at Ball Homes and other BHE companies.  She was bewildered and humiliated that BHE denied her the employee discount, refused to sell her any BHE residential property, and by the reason given.  This distress was compounded because for months thereafter her co-workers continued to ask her about her plans or about the change in her plans.

17.     In late January 2014, Ms. Trowbridge requested that Ball Homes make a cash payment to her in lieu of the employee discount in kind.  This request was refused, and Ball Homes made no offer to provide her with any full or partial equivalent to the earned employee benefit that it had taken from her.

18.     Given how she and her family had been treated, Ms. Trowbridge gave notice that she would be leaving Ball Homes' employment.  Her last day at work was February 14, 2014. Neither to this date nor within 14 days of either her last day of work or her subsequent demand therefor has Ball Homes paid Ms. Trowbridge anything for the earned employee benefit denied to her.

<u>Claims</u>

19.     By its decisions and actions in breach of the employment contract, Ball Homes arbitrarily denied Ms. Trowbridge an earned employee benefit.

20.     The employee discount, or its monetary equivalent after it was denied in kind, was compensation due to Ms. Trowbridge and constituted "wages" within the meaning of KRS 337.010(1)(c).  Ball Homes has not paid Ms. Trowbridge these wages within the time limits

specified in KRS 337.020 or 337.055, and for its violation of wage payment law Ball Homes is liable to Ms. Trowbridge under KRS 337.385.

21.     Defendants made misrepresentations to Ms. Trowbridge that she was approved to received the employee benefit on an Enclave house but needed to have her existing Ball Homes enterprise ("BHE") house sold to secure a lot in the Enclave and that she needed to meet various conditions to obtain the required financing pre-approval.  These representations were false or misleading per se or given that Defendants would not sell her <u>any</u> BHE property.  By their mis-representations, Defendants intended to induce Ms. Trowbridge to sell her existing BHE house and forestall her acquisition of interests in a property in the Enclave development.  Ms. Trow-bridge relied on what she was told to her detriment, quickly selling her existing house, having to secure and use interim housing arrangements for her family for an extensive period of time, and expending time and other resources.

22.     Ball Homes was Ms. Trowbridge's employer, subject to the Kentucky Civil Rights Act employment anti-discrimination provisions.  Ball Homes would not have denied Ms. Trow-bridge the earned employee benefit related to the purchase of a BHE property as her residence but for her darker color and her Hispanic ancestry.  In discriminating against Ms. Trowbridge on the basis of her color or race/national origins with respect to compensation, terms, conditions, or privileges of employment, Ball Homes committed an unlawful employment practice in violation of KRS 344.040.

23.     The lots in the Enclave development and Ms. Trowbridge's existing BHE house were "dwellings" or "housing accommodations" protected by the anti-discrimination provisions of the Fair Housing Act and the Kentucky Civil Rights Act; additionally, on information and be-lief, each Defendant was an entity whose business included engaging in residential real estate-

related transactions and was (or was acting on behalf of) a real estate operator, broker, or sales-man.  Defendants would not have delayed or forestalled the sale of an Enclave property, refused to sell real property to Ms. Trowbridge, induced the sale of her existing house, or otherwise dis-criminated against her in the terms, conditions, or privileges of the sale/purchase of real property but for her darker color and Hispanic ancestry, or that of another family member, or for her being part of a "mixed" color and ancestry marriage.  In discriminating against Ms. Trowbridge and her family on the basis of color or race/national origins, whether due to BHE biases or to cater to perceived biases among existing or prospective purchasers, Defendants committed an unlawful housing practice in violation of 42 U.S.C. §§ 3604, 3605, or 3617 and KRS 344.360.

24.     On information and belief, each Defendant is a creditor, financial institution, or entity whose business includes engaging in real estate-related transactions, subject to the Equal Credit Opportunity Act and Kentucky Civil Rights Act anti-discrimination provisions.  Defen-dants would not have discriminated against Ms. Trowbridge in the offering, extension, terms, or conditions for financing but for her darker color and Hispanic ancestry.  In discriminating against Ms. Trowbridge on the basis of color or race/national origins, Defendants committed an unlawful credit transaction practice in violation of 15 U.S.C. § 1691(a)(1) and KRS 344.370.

25.     The conduct of Defendants also impaired Ms. Trowbridge's same right to make and enforce contracts and to purchase and hold real property as is enjoyed by white citizens, in violation of 42 U.S.C. §§ 1981 and 1982, respectively.

26.     Ms. Trowbridge suffered economic and non-economic damages as a result of De-fendants' breach, inducement, and violations.

## Conclusion

WHEREFORE, Plaintiff Veronica Trowbridge demands relief against Defendants and each of them as follows:

A. Jury trial on all issues so triable;

B. Judgment for applicable compensatory damages, liquidated damages, and penalties, including prejudgment interest and punitive damages in an amount to punish Defendants' misconduct and to deter Defendants and others from engaging in similar misconduct in the future;

C. Disgorgement of revenues received due to unlawful conduct, including the commission obtained on the sale of her existing BHE house;

D. Award of costs, including a reasonable attorneys fee; and

E. Such other relief to which she may be entitled.

Respectfully submitted,

 /s/ Katherine K. Yunker

Katherine K. Yunker
*yunker@desuetude.com*
YUNKER & PARK PLC
P.O. Box 21784
Lexington, KY 40522-1784
859-255-0629
fax:  859-255-0746

ATTORNEY FOR PLAINTIFF,
VERONICA TROWBRIDGE